IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICIA M. BENWAY          :
AND                         :
TIMOTHY J. BENWAY           :
                            :
Individually and on behalf of  :
a class of borrowers similarly  :
situated                    :
                            :
v.                          :    Civil No. WMN-05-3250
                            :
RESOURCE REAL ESTATE SERVICES,  :
LLC <u>et</u> <u>al.</u>              :

<u>**MEMORANDUM**</u>

Before the Court is the motion of the Plaintiffs, Patricia
and Timothy Benway ("the Benways"), for certification of the
class in a class action suit.  Paper No. 56.  Defendants have
opposed the motion to certify the class and the Benways have
replied.  Upon review of the pleadings and the applicable case
law, the Court has determined that no hearing is necessary, and
that the motion of the Plaintiffs will be granted, consistent
with the conditions set forth in this memorandum.

<u>**FACTS AND PROCEDURAL HISTORY**</u>

Defendant Resource Real Estate Services, LLC ("Resource")
provides real estate title and mortgage loan closing services in
Maryland.  Defendant Millard S. Rubenstein ("Rubenstein") is the
Managing Member and principle owner of Resource.  Defendant
Access One Mortgage Group, Inc. ("Access One") provides mortgage
brokerage services.  Plaintiffs allege that Resource and Access

One established Clipper City Settlement Services, Inc. ("Clipper City") as an affiliated business arrangement ("ABA"), designed to appear on mortgage closing documents as an entity which had performed title work or settlement services.  Plaintiffs allege that Rubenstein owns a 51% interest in Clipper City and has a monetary interest in at least eleven other ABAs.[1]  Plaintiffs claim that Resource and Access One conducted a scheme to extract referral fees from borrowers using ABAs like Clipper City. Allegedly, Access One would refer borrowers to Resource for title work.  Though Resource would perform the relevant work, the loan closing documents would attribute that work to Clipper City, and the fees charged for the work would exceed the customary fees charged by Resource.  Resource would then channel a portion of the fees collected by Clipper City to Access One as a referral reward, without notifying the borrower.

The Benways claim to have been victimized by Defendants' scheme by paying excessive fees to Clipper City during the refinancing of their home mortgage loan.  On October 25, 2005, they filed a class action suit in the Circuit Court for Baltimore

---

[1]  The other ABAs that Plaintiffs claim Resource and its principals created include: (1) Harvard Settlement Services, Inc.; (2) Allegiance Settlement Services, Inc.; (3) Assurance Title Agency, Inc.; (4) Creative Title Agency, Inc.; (5) Accurate Settlement Services, Inc.; (6) Integrity Settlement Services, Inc.; (7) Interstate Title Co., Inc.; (8) Quality Title Agency, Inc.; (9) Reliable Settlement Services, LLC; (10) Trust Settlement Services, Inc.; and (11) Travelers Settlement Services, Inc.  Paper No. 56, p. 1.

County, Maryland, naming Resource, Access One, and Clipper City

as defendants.  Those defendants removed the case to this Court

on December 2, 2005.  The Benways amended their complaint on

August 9, 2006, to include Rubenstein as a defendant.  Paper No.

63.  In the instant motion for class certification, the Benways

ask the Court to certify a class consisting of:

> All borrowers who entered into mortgage loan
> transactions using the services of Resource
> Real Estate where the HUD-1 Settlement
> Statement, or other documents in the loan
> file, included a charge for or payment to an
> affiliated business arrangement or entity.

Paper No. 56, p. 1.  The Benways allege that Defendants' actions

constituted civil conspiracy and violated the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq.[2]

## II. LEGAL STANDARDS

Rule 23 of the Federal Rules of Civil Procedure governs

certification of class actions.  For certification, a class must

---

[2]  In their amended complaint, the Benways propose two
plaintiff classes, "Class A," at issue here, and "Class B,"
consisting of: "All borrowers who are Maryland residents and who
entered into mortgage loan transactions using the services of
Resource Real Estate for their Maryland residence where a charge
or payment was made to an affiliated business arrangement or
entity."  Paper No. 63, p. 13.  In addition to the conspiracy and
RESPA counts, the Benways allege that the plaintiffs in Class B
have statutory claims for violations of the Maryland Consumer
Protection Act, Md. Code Ann., Com. Law §§ 13-101 et seq., and
the Maryland Finders Fee Act, Md. Code Ann., Com. Law §§ 12-801
et seq., and claims arising in common law fraud and negligent
misrepresentation.  The propriety of the certification of Class A
with respect to the RESPA and civil conspiracy claims asserted by
Plaintiffs is the only issue presently before the Court.

satisfy all of the conditions of Rule 23(a),[3] and at least one

condition of Rule 23(b).[4]   The proponent of certification carries

---

[3] Rule 23(a) provides: "One or more members of a class may
sue or be sued as representative parties on behalf of all only if
(1) the class is so numerous that joinder of all members is
impracticable, (2) there are questions of law or fact common to
the class, (3) the claims or defenses of the representative
parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect
the interests of the class."  Fed. R. Civ. P. 23(a).


[4] For a class action to be maintained, one of the following
conditions of Rule 23(b) must be satisfied:

> (1) the prosecution of separate actions by or
> against individual members of the class would
> create a risk of (A) inconsistent or varying
> adjudications with respect to individual
> members of the class which would establish
> incompatible standards of conduct for the
> party opposing the class, or(B) adjudications
> with respect to individual members of the
> class which would as a practical matter be
> dispositive of the interests of the other
> members not parties to the adjudications or
> substantially impair or impede their ability
> to protect their interests; or

> (2) the party opposing the class has acted or
> refused to act on grounds generally
> applicable to the class, thereby making
> appropriate final injunctive relief or
> corresponding declaratory relief with respect
> to the class as a whole; or

> (3) the court finds that the questions of law
> or fact common to the members of the class
> predominate over any questions affecting only
> individual members, and that a class action
> is superior to other available methods for
> the fair and efficient adjudication of the
> controversy. The matters pertinent to the
> findings include: (A) the interest of members
> of the class in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation
> concerning the controversy already commenced
> by or against members of the class; (C) the

the burden of showing that the requirements of Rule 23 have been satisfied.  <u>Windham v. Am. Brands, Inc.</u>, 565 F.2d 59, 64 (4th Cir. 1977).  In determining class certification, the Court will avoid an evaluation of the merits of the underlying claim, <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177-78 (1974), however, the Court may consider discovery directed to the certification issue.  <u>Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.</u>, 659 F.2d 1259, 1267 (4th Cir. 1981).  The Court has discretion in determining whether to certify a class and such a determination will be reviewed only for an abuse of that discretion.  <u>Boley v. Brown</u>, 10 F.3d 218, 223 (4th Cir. 1993).

## III. DISCUSSION

Defendants argue that the Court must deny Plaintiffs' motion for certification because the proposed class fails to satisfy the commonality, typicality and adequacy requirements of Rule 23(a), and fails to satisfy any of the requirements of Rule 23(b).  The Court finds that satisfaction of the typicality requirement of Rule 23(a) requires a limitation of the scope of the proposed class.  Accordingly, the Court will begin with a typicality analysis before discussing the additional requirements of Rule

---

        desirability or undesirability of
        concentrating the litigation of the claims in
        the particular forum; (D) the difficulties
        likely to be encountered in the management of
        a class action.

Fed. R. Civ. P. 23(b).

23(a).

**Typicality**

Rule 23 requires the Plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claims of the named plaintiffs must be consistent with those of the class, however, the claims need not be identical. See Twyman v. Rockville Hous. Auth., 99 F.R.D. 314, 321 (D. Md. 1983). "Factual differences will not necessarily render a claim atypical if the representative's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class, and is based on the same legal theory." Id. (quoting Smith v. Baltimore & Ohio R.R. Co., 473 F.Supp. 572, 581 (D. Md. 1979)). The typicality requirement of Rule 23, however, may be used "to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Wright, Miller & Kane, Federal Practice and Procedure § 1764 (3d ed. 2005).

The Benways allege that Defendants violated sections 8(a) and 8(b) of RESPA by using illegitimate ABAs to engage in a scheme to overcharge borrowers and to pay kickbacks in exchange

for settlement service referrals.[5]   An exception to RESPA's

section 8(a) and 8(b) restrictions exists for ABAs which comply

with the specific conditions listed in section 8(c).[6]  12 U.S.C.

§ 2607(c)(4)(A-C).  To be eligible for the 8(c) exception,

however, an ABA must be a "bona fide provider of settlement

services."  HUD Statement of Policy 1996-2, Regarding Sham

---

[5] Section 8 of RESPA prohibits:
    (a) Business referrals
    No person shall give and no person shall
    accept any fee, kickback, or thing of value
    pursuant to any agreement or understanding,
    oral or otherwise, that business incident to
    or a part of a real estate settlement service
    involving a federally related mortgage loan
    shall be referred to any person.

    (b) Splitting charges
    No person shall give and no person shall
    accept any portion, split, or percentage of
    any charge made or received for the rendering
    of a real estate settlement service in
    connection with a transaction involving a
    federally related mortgage loan other than
    for services actually performed.
12 U.S.C. § 2607(a-b).

[6] Section 8(c) of RESPA provides an exception for ABAs so
long as:
    (A) a disclosure is made of the existence of
    such an arrangement to the person being
    referred and, in connection with such
    referral, such person is provided a written
    estimate of the charge or range of charges
    generally made by the provider to which the
    person is referred . . . (B) such person is
    not required to use any particular provider
    of settlement services, and (C) the only
    thing of value that is received from the
    arrangement, other than the payments
    permitted under this subsection, is a return
    on the ownership interest or franchise
    relationship[.]
12 U.S.C. § 2607(c)(4)(A-C).

Controlled Business Arrangements, 61 Fed. Reg. 29258, 29262 (June 7, 1996) ("HUD Policy Statement 1996-2").[7] If an ABA does not meet the definition of a bona fide service provider, its compliance with the conditions set forth in section 8(c) will not exclude it from RESPA liability.  12 U.S.C. § 2607(c)(4)(A-C); HUD Policy Statement 1996-2, 61 Fed. Reg. at 29262.

The Benways' claims rest on the factual determination that Clipper City failed to meet the HUD standards for a "bona fide provider of settlement services."  The HUD factors require that each allegedly illegitimate ABA be analyzed separately to

---

[7] The Department of Housing and Urban Development ("HUD") has provided ten factors for determining whether an ABA is a "bona fide provider of settlement services."  The factors have been summarized as follows:

> (1) does the entity have sufficient initial capital and net worth; (2) is the entity staffed with its own employees; (3) does the entity manage its own business affairs; (4) does the entity have a separate office; (5) are substantial services provided by the entity; (6) does the entity perform substantial services by itself; (7) if the entity contracts out services, are they from an independent company; (8) if the entity contracts out work to another party, is the party performing any contracted services receiving a payment for services of facilities provided that bears a reasonable relationship to the value of the services or goods received; (9) is the new entity actively competing in the marketplace for business; and (10) is the entity sending business exclusively to one of the settlement providers that created it.

Gardner v. First Am. Title Ins. Co., 2003 WL 221844, at *2 n.2 (D. Minn. Jan. 27, 2003) (citing HUD Policy Statement 1996-2, 61 Fed. Reg. at 29262).

determine whether they are eligible for RESPA's section 8(c) exception.  The HUD factors address characteristics of each individual entity, including an analysis of each ABA's personnel, management structure, physical location, and the manner in which services are provided.  HUD Policy Statement 1996-2, 61 Fed. Reg. at 29262.  Here, Defendant's have submitted evidence that each ABA employs a different number of individuals, has operating licenses for different states, conducts business with a variety of different mortgage brokers, has separate managerial staff, and some of the ABAs differ in the physical location of their office space.  Assuming the Benways could establish the illegitimacy of Clipper City and establish that Clipper City engaged in a consistent scheme to pay kickbacks in exchange for referrals, they would have done nothing to establish the claims of those plaintiffs whose HUD-1 settlement statements did not list Clipper City.  See Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998) ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").  Thus, because the validity of each individual ABA must be determined independently under the HUD factors, the claim that Clipper City operated as a "sham" entity is not typical of the claims of members of the prospective class whose HUD-1 settlement statement refers to an ABA other than Clipper City.

A finding of atypicality does not necessarily result in the dismissal of a class suit.  Under the flexible powers granted in Rule 23, "[w]hen questions arise as to a named plaintiff's ability to represent the interests of some part of the putative class, it is proper for the court 'to limit the class to those persons who would be adequately protected by the named representative[.]'"  <u>Dameron v. Sinai Hosp. Of Baltimore, Inc.</u>, 595 F. Supp. 1404, 1409 (D. Md. 1984) (limiting the class due to the inadequacy of the representative plaintiff) (citing C. Wright & A. Miller, <u>Federal Practice and Procedure</u>, § 1765 at 624-25 (1972)).  Pursuant to Rule 23, this Court finds that the Benways' claims are typical of those borrowers who entered into mortgage loan transactions using the services of Resource Real Estate where the HUD-1 Settlement Statement, or other documents in the loan file, included a charge for or payment to Clipper City. Such a definition of the class eliminates the Benways' need to prove the illegitimacy of each ABA, including those not affiliated with their loan transaction.

**<u>Numerosity</u>**

Rule 23(a)(1) requires a showing that joinder of the purported class would be impracticable.  <u>George v. Baltimore City Pub. Schs.</u>, 117 F.R.D. 368, 370 (D. Md. 1987).  Here, Defendants have not challenged satisfaction of the numerosity requirement. Defendants admit that, even if the class were limited to

10

borrowers using the services of Clipper City, there would be in excess of five hundred class members.  Paper No. 66, p. 12.  Such an amount would make joinder impracticable.  <u>See</u> <u>Twyman</u>, 99 F.R.D. at 320 ("many courts have found that approximately 150 members satisfies the numerosity requirement").

**<u>Commonality</u>**

Rule 23(a)(2) requires that common questions of law or fact exist among the members of the class.  A single common issue shared among class members is sufficient to satisfy commonality.  <u>Peoples v. Wendover Funding, Inc.</u>, 179 F.R.D. 492, 498 (D. Md. 1998).  Where class members share the same legal theory, individual factual differences will not preclude certification, however, refusal of certification may be appropriate where "individual factual considerations predominate over common questions."  <u>Id.</u> (citing <u>Zimmerman v. Bell</u>, 800 F.3d 386, 389-90 (4th Cir. 1989)).

Defendants challenge commonality by arguing that the determination of an ABA's compliance with sections 8(a) and 8(b) of RESPA requires a loan specific, transaction-by-transaction analysis which would preclude a finding of commonality among the proposed class members.  Determining whether an ABA complies with the standards of a "bona fide provider of settlement services" does not require consideration of the specifics of an individual loan transaction.  HUD Policy Statement 1996-2, 61 Fed. Reg. at

11

29262.  Rather, the HUD factors consider the general
characteristics of an ABA, such as the services it offers, its
personnel, and its management structure.[8]  Id. at 29262-63.
Because determining Clipper City's eligibility for RESPA's
section 8(c) exception does not require a transaction-by-
transaction analysis, that determination is not precluded from
serving as an issue common to the members of the redefined
plaintiff class.

---

[8] HUD provides the following example and finds, without
analyzing the specifics of any loan transaction, that the entity
described would not constitute a bona fide provider of settlement
services:

> An existing real estate broker and an
> existing title insurance company form a joint
> venture title agency. Each participant in the
> joint venture contributes $1000 towards the
> creation of the joint venture title agency,
> which will be an exclusive agent for the
> title insurance company. The title insurance
> company enters a service agreement with the
> joint venture to provide title search,
> examination and title commitment preparation
> work at a charge lower than its cost. It also
> provides the management for the joint
> venture. The joint venture is located in the
> title insurance company's office space. One
> employee of the title insurance company is
> 'leased' to the joint venture to handle
> closings and prepare policies. That employee
> continues to do the same work she did for the
> title insurance company. The real estate
> broker participant is the joint venture's
> sole source of business referrals. Profits of
> the joint venture are divided equally between
> the real estate broker and title insurance
> company.

HUD Policy Statement 1996-2, 61 Fed. Reg. at 29263.

Defendants also challenge a finding of commonality by arguing that the establishment of a violation of RESPA requires a transaction-by-transaction determination of whether each borrower was affirmatively influenced to use an ABA and whether an actual overcharge for services occurred.  Section 8(a)'s prohibition against the payment of formal kickbacks or fees for the referral of business, however, does not require establishment of an overcharge to the consumer.[9]  Robinson v. Fountainhead Title Group Corp., -- F. Supp. 2d --, 2006 WL 2346428, at *8 (D. Md. Aug. 9, 2006).  Section 8(a) simply prohibits the payment of fees pursuant to any agreement or understanding for the referral of settlement services.  12 U.S.C. § 2607(a).  Thus, a factual issue common to the proposed class exists as to whether Clipper City entered into and executed the type of referral agreement which could violate section 8(a).

While violation of section 8(b) does require the establishment of an overcharge to the borrower, the Benways allege that the ABAs were engaged in a common scheme to overcharge consumers and, because the ABAs performed little or no work in providing settlement services, such an overcharge occurred as a matter of course in every settlement transaction.

_____

    [9]  As opposed to section 8(a), which contemplates the existence of a referral agreement, section 8(b) "prohibits conduct where money is moving in the same way as a kickback or referral fee even though there is no explicit referral agreement."  Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 266 (4th Cir. 2002) (discussing the requirement of showing an overcharge to establish a violation of section 8(b)).

Whether Clipper City engaged in such a scheme constitutes an additional question of fact common to the plaintiff class.

### D. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This rule ensures that class counsel is competent and willing to prosecute the action and that no conflict of interest exists between the named parties and the class they represent.  <u>Achem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997).

Here, Defendants do not suggest that the Benways' claims are in conflict with the claims of the members of the proposed class, nor are they in conflict with the members of the redefined class. Rather, Defendants contend that the Benways have not exhibited adequate knowledge regarding the particularities of their loan transaction, and, therefore, fail as adequate class representatives.  Rule 23 does not require the representative plaintiffs to have extensive knowledge of the intricacies of litigation, rather, the named plaintiffs must have a general knowledge of what the action involves and a desire to prosecute the action vigorously.  7A Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1766 (3d ed. 2005).  Here, the Benways have offered deposition testimony which supports their contention that they have a general understanding of the litigation, that they are knowledgeable about their loan transaction, and that

14

they have a desire to pursue the litigation vigorously.   Thus,
the Benways satisfy Rule 23's test for adequacy.

Further, Defendants do not challenge the competency of class
counsel, and no evidence suggests that counsel would fail to
adequately represent the class.   <u>Twyman</u>, 99 F.R.D. at 322
(Plaintiff's attorney must be qualified to conduct the proposed
litigation).   Plaintiffs have presented evidence that class
counsel is experienced and capable of handling class action
litigation.[10]

**Rule 23(b)**

Once the requirements of Rule 23(a) have been satisfied, the
party seeking class certification must show that the action is
maintainable under one of the three conditions listed in Rule
23(b).   <u>Achem Prods., Inc.</u>, 521 U.S. at 614.   Plaintiffs propose
certification under each prong of the Rule 23(b) analysis.   Rule

---

[10]   Defendants also challenge the adequacy of the Benways as
class representatives, claiming that they have not sought a class
which coincides with RESPA's statute of limitations.   It seems
clear, however, that the Benways' transaction falls within the
one year statute of limitations provided by RESPA.   The Benways
allege, and Defendants do not challenge, that they completed
their loan transaction on November 3, 2004, and filed the instant
lawsuit on October 25, 2005.   The Benways further allege that
Defendants can electronically determine the date on which each
borrower completed their loan transaction.   Thus, the Benways
adequately represent those class members whose claims are not
barred by RESPA's statute of limitations.   12 U.S.C. § 2614; <u>see
also</u> <u>Dameron</u>, 595 F. Supp. at 1409 (noting that motions for
certification are generally not precluded by the assertion of a
statute of limitations defense).

23(b)(3), however, provides the most appropriate category for
certification in the instant case.  See Peoples, 179 F.R.D. at
500 (finding that in actions where monetary damages constitute
the primary relief requested, even though injunctive relief is
also sought, Rule 23(b)(3) certification is appropriate).

Rule 23(b)(3) requires that common issues "predominate over
any questions affecting only individual members, and that a class
action is superior to other available methods for the fair and
efficient adjudication of the controversy."  Fed. R. Civ. P.
23(b)(3).[11]  Rule 23(b)(3) actions are particularly well-suited
for cases in which small individual recoveries would not provide
plaintiffs with enough incentive to prosecute separate actions.
Achem Prods., Inc., 521 U.S. at 617 (citing Mace v. Van Ru Credit
Corp., 10 F.3d 338, 344 (7th Cir. 1997)).

The questions of law and fact that are common to the
redefined class predominate over any individualized concerns.
The central question of this action is whether Clipper City is an
illegitimate entity and whether the defendants have used Clipper
City to execute a kickback scheme in violation of section 8 of

---

[11]  To determine whether a class satisfies Rule 23(b)(3), the
Court should also consider: "(A) the interest of members of the
class in individually controlling the prosecution or defense of
separate actions; (B) the extent and nature of any litigation
concerning the controversy already commenced by or against
members of the class; (C) the desirability or undesirability of
concentrating the litigation of the claims in the particular
forum; (D) the difficulties likely to be encountered in the
management of a class action."  Fed. R. Civ. P. 23(b)(3).

RESPA.  12 U.S.C. § 2607.  As stated above, determination of
whether Clipper City operated as a legitimate settlement service
provider is a common question which does not require analysis of
the individual loan transactions of each class member.  See HUD
Policy Statement 1996-2, 61 Fed. Reg. at 29262.  With regard to
Defendants' violation of RESPA, the Benways allege that
Defendants operated in the same manner with regard to all
customers, that they paid referral fees in connection with each
settlement transaction, and that they used identical,
standardized documents for each borrower.  Compare Arrington v.
Colleen, Inc., No. Civ. AMD-00-191, 2001 WL 34117734, at *7 (D.
Md. Apr. 2, 2001) (certification is appropriate where defendant's
use of identical documents indicates that the showing of proof to
establish liability will be similar for all class members) with
Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331,
339-40 (4th Cir. 1998) (district court improperly certified a
class of franchisees whose members had entered into significantly
different contracts).  These issues, common to the redefined
class, satisfy Rule 23(b)(3)'s predominance requirement.

In addition to finding that common issues predominate over
questions affecting individual members of the class, the Court
also finds that treating this action as a class action is
superior to other available methods for the fair and efficient
adjudication of the controversy.  Certification will promote

17

judicial economy and, in consumer actions such as this, where the amount of individual recovery may not sufficiently induce individual suit, class action certification is particularly appropriate. <u>Achem Prods., Inc.</u>, 521 U.S. at 617 (noting that class action litigation is particularly effective in creating an incentive to sue in actions in which individual recovery would be relatively small).

The redefined class is narrow in scope and the identity of the class members can be ascertained easily from Defendants' records. Thus, the delivery of notice, as required by Rule 23(c)(2) will not be unduly difficult. <u>See</u> Fed. R. Civ. P. 23(b)(3)(D) (the court should consider issues of class management in determining whether certification is appropriate). Additionally, Defendants have presented no indication that there is a pending case presenting similar claims concerning the content of this litigation. <u>See</u> Fed. R. Civ. P. 23(b)(3)(B) (the court should consider the extent of any litigation concerning the controversy already commenced by members of the class).

## IV. CONCLUSION

For the above stated reasons, Plaintiffs' Motion for Certification of the Class, as redefined by the Court, will be GRANTED. Plaintiffs shall submit, within 14 days of the date of this Memorandum, a proposed order, consistent with this Court's limitation of the class, addressing issues of notice, opt-out provisions, and the other requirements of Rule 23(c).

_____/s/_____
William M. Nickerson
Senior United States District Judge


Dated: October 16, 2006