```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

PATRICIA M. BENWAY et al.        *
                                 *
        v.                       *   Civil Action WMN-05-3250
                                 *
RESOURCE REAL ESTATE             *
SERVICES, LLC et al.             *

          *  *  *  *  *  *  *  *  *  *  *  *

**MEMORANDUM**

Pending before the Court is Plaintiffs' Motion to Certify Question to Maryland's Court of Appeals, ECF No. 157, in which Plaintiffs request that this Court certify a question to the Maryland Court of Appeals regarding the viability of a framework deployed within the parties' proposed settlement agreement. Defendants oppose the motion, which has been fully briefed and is ripe for review. Upon a review of the pleadings and applicable case law, the Court will deny Plaintiffs' motion for the reasons set forth below.

I.  BACKGROUND

This lawsuit, now nearly six years old, involves alleged violations of the Real Estate Settlement Procedures Act and the Maryland Finder's Fee Act along with various tort claims. It is one of several class action lawsuits filed in this Court by Plaintiffs' counsel against various defendants alleging similar violations, at least one of which has already successfully settled. This case, too, is near its end after the parties

reached a settlement agreement (Settlement) last year. Shortly thereafter, on November 24, 2010, this Court preliminarily approved the Settlement, which Plaintiffs described in their motion for preliminary approval as "straightforward" and the direct result of "lengthy and arduous arm's-length negotiations" after over five years of litigation, several months of settlement discussions, and at least six mediation sessions before Chief Magistrate Judge Grimm. Mot. Prelim. Approval 2-3, ECF No. 143-1. Nevertheless, despite a long history of hard-fought and sophisticated legal representation, Plaintiffs have now filed this motion a mere two months before the final approval hearing.

The instant dispute is borne of the non-traditional nature of the Settlement. Two of the Defendants in this case are no longer in business and the others are without sufficient assets to pay a substantial settlement. In consequence, the parties agreed to settle this case with funds from two insurance policies owned by Defendants. The policies were issued by Legal Mutual Liability Insurance Society of Maryland and Illinois Union Insurance Company (Insurers).[1] The combined coverage limit

---

[1] The Legal Mutual policy allegedly covers losses up to $3 million by Resource Title and Rubenstein, while the Illinois Union policy purportedly covers losses up to $1 million by

2

for both policies amounts to $3.5 million, and while Plaintiffs claim direct class-wide damages equal $5.36 million, Plaintiffs have agreed to limit their recovery to the coverage limits. Thus, the settlement fund from which the plaintiff class will recover is to be funded exclusively by the insurance companies.

The Insurers, however, have not consented to the Settlement. Instead, they are disputing coverage for the alleged illegal acts in a separate declaratory judgment action now pending in Maryland state court.[2] When the parties negotiated the Settlement, they were aware the insurers had reserved their rights, but the parties nonetheless attempted to include the Insurers in their settlement discussions and mediation sessions before Judge Grimm. Even so, the Insurers refused to settle. Because the Insurers "failed to accept responsibility for their insureds' liability exposures" and "refused to offer reasonable and substantial funds to settle" this case, the parties negotiated their Settlement within the framework established by Miller v. Shugart, 316 N.W.2d 729

---

Clipper City. The limits on liability for both policies are decreased by the costs of defense.

[2] Legal Mutual has already filed a declaratory judgment action against Resource Title and Rubenstein in Baltimore County Circuit Court. Illinois Union, however, has not yet filed a declaratory judgment action against Clipper City, but it has "unambiguously advised" Defendants it intends to do so. Mot. Certify 3, ECF No. 157-1.

(Minn. 1982) (Miller-Shugart). Mot. Certify 2-3. This framework or protocol allows a defendant whose insurer refuses coverage on a claim to (1) stipulate to a settlement with the plaintiff for the amount of its insurance policy without violating the defendant's obligation to cooperate with its insurer, and (2) assign its rights against the insurer to the plaintiff, after which the plaintiff proceeds against the insurer as a creditor in a separate action.

In this case, the Miller-Shugart framework, together with the language of Defendants' insurance policies, provided the following three-step process for the Settlement. First, upon final approval of the Settlement by this Court, Plaintiffs will enter into a consent judgment of $700,000 against Defendant Clipper City Title, LLC, while simultaneously entering into a settlement for $2.8 million with Defendants Resource Real Estate Services, LLC and Millard Rubenstein. These numbers reflect the coverage limits for Defendants' insurance policies. Defendants will also assign their rights against their non-paying Insurers to Plaintiffs. Next, the parties will ask the Court to dismiss with prejudice all claims asserted by Plaintiffs in this case, thereby terminating Defendants' collective involvement in this litigation. And finally, Plaintiffs will pursue payment of the $3.5 million from the Insurers in a separate declaratory

judgment action.  Thus, under the Settlement, the settlement fund established for the plaintiff class will only be funded if Plaintiffs successfully litigate their later action against the Insurers.  The parties reached their Settlement after Plaintiffs' counsel discussed this contingency with the class representatives, and Plaintiffs memorialized the Settlement on November 22, 2010, with full knowledge that any recovery would turn on their later declaratory judgment action.  Though non-traditional, such Miller-Shugart agreements are not entirely uncommon, and several jurisdictions outside of Maryland have explicitly endorsed them.[3]

---

[3] Notably, however, Plaintiffs allege three states have either rejected or possibly rejected the Miller-Shugart protocol.  See Am. Family Mut. Ins. Co. v. C.M.A. Mortg., Inc., 682 F. Supp. 2d 879 (S.D. Ind. 2010) (discussed infra); Am. Physicians Ins. Exchange v. Garcia, 876 S.W.2d 842 (Tex. 1994); and Strahin v. Sullivan, 647 S.E.2d 765 (W. Va. 2007).  The latter two are inapplicable to this case.
    For example, Garcia is likely of no use as guiding authority to jurisdictions outside Texas given its complex procedural history and, in any event, that case, via its affirmation of both Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544 (Tex. Comm'n App. 1929) (holding that when an insurer assumes the defense of its insured and fails to settle when an ordinary prudent person in the insured's position would have settled, the insurer may be held liable for damages), and Ranger Cnty. Mut. Ins. Co. v. Guin, 723 S.W.2d 656 (Tex. 1987), supports the validity of Miller-Shugart more than subverts it.
    In Strahin, the Supreme Court of West Virginia decided whether a plaintiff, having been assigned an insured's rights against an insurer, has a claim for the amount of a jury verdict in excess of the insurance policy's coverage limit.  Thus, it is distinguishable from the instant case.  Moreover, the law of

Maryland, however, has not yet endorsed such agreements. Even so, Plaintiffs signed the Settlement—and later asked the Court to preliminarily approve the Settlement as reasonable, fair and adequate—despite the fact that no Maryland court or statute has explicitly validated the Miller-Shugart framework under Maryland law. When Plaintiffs asked this Court to preliminarily approve the Settlement, Plaintiffs sought to allay any concerns regarding the applicability of the framework by citing numerous cases from several other jurisdictions around the country that have already adopted the rule from Miller-Shugart.[4] ECF No. 143-1 at 4 n.3. At the same time, Plaintiffs further informed the Court that they "expect the [state] court will fully enforce the settlement and require Defendants' Insurers to provide full payment of the $3.5 million." ECF No.

---

West Virginia is sympathetic, not adverse, to the concerns animating Miller-Shugart. See Shamblin v. Nationwide Mut. Ins. Co., 396 S.E.2d 766, 776 (W. Va. 1990) ("Wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to settle and where such settlement within policy limits would release the insured from any and all personal liability, the insurer has prima facie failed to act in its insured's best interest and such failure to so settle prima facie constitutes bad faith toward its insured.").

[4] See, e.g., USAA v. Morris, 741 P.2d 246 (Ariz. 1987); Patrons Oxford Ins. Co. v. Harris, 905 A.2d 819 (Me. 2006); see also, Pls.' Reply 6 n.4, ECF No. 159 (listing additional jurisdictions adopting Miller-Shugart, including Washington, Illinois, Alaska, Missouri, North Dakota and Connecticut).

143-1 at 6 n.4.  Given this case's long history of sophisticated litigation, lengthy and hard-fought settlement negotiations, Plaintiffs' counsels' well-established competence, the heavy weight of authority supporting Plaintiffs' position, and the dearth of Defendants' assets and alternative means for resolving this dispute, the Court preliminarily approved the Settlement without hesitation.  This case, it seemed, was nearing its long-awaited conclusion.

But then, not long after the preliminary approval, the Insurers presented Plaintiffs with a relatively recent memorandum opinion from the Southern District of Indiana, <u>Am. Family Mut. Ins. Co. v. C.M.A. Mortg., Inc.</u>, 682 F. Supp. 2d 879 (S.D. In. 2010) (<u>American Family</u>),[5] in which that court, attempting to apply Indiana law, held that the Miller-Shugart framework was inconsistent with other principles of Indiana law. Mot. to Extend Deadlines 2, ECF No. 146.  That holding issued despite earlier cases from Indiana reaching the opposite conclusion.  The Insurers thus informed Plaintiffs they would rely on <u>American Family</u> to contest the Settlement in Maryland state court.  Thereafter, apparently now spooked by one case applying Indiana law that was published ten months <u>before</u> the

---

[5] Though relatively new, <u>American Family</u> was published on January 12, 2010, over ten months <u>before</u> the parties in this case memorialized the Settlement.

parties memorialized the Settlement, Plaintiffs filed the instant motion.

## II. CERTIFICATION

The Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc., § 12-603, provides a mechanism by which federal courts may seek the counsel of the Maryland Court of Appeals regarding state law questions. Pursuant to the statute, the Maryland Court of Appeals may answer a certified question of law "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of [Maryland]." Id. "The decision to certify a question to the [Maryland] Court of Appeals 'rests in the sound discretion of the federal court.'" Cecilia Schwaber Trust Two v. Hartford Accident and Indem. Co., 636 F. Supp. 2d 481, 491 (D. Md. 2009) (citing Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)). Accordingly, Plaintiffs request the Court to certify the following question (Question):

> Would the Maryland courts follow the rule set forth in Miller v. Shugart, 316 N.W.2d 729 (Minn.1982), and later cases following that decision, that an insured's settlement of a claim without the insurer's consent, on terms that effectively relieve the insured of personal liability, does not breach the insured's duty to cooperate with the insurer or otherwise bar insurance coverage for the claim when the insurer: (a) is defending the insured; but (b) has reserved its rights with respect to coverage or filed an action

8

> seeking a declaration that the claim is not covered; and (c) has failed to accept responsibility for the insured's indemnity exposure by offering reasonable and substantial amounts to settle the claim?

Mot. Certify 1.

Plaintiffs frame this motion within the context of the Court's impending final approval analysis of the Settlement under Federal Rule of Civil Procedure 23. They argue the Question will determine the Settlement's final approval because, if Maryland courts will not follow the Miller-Shugart rule, then the class members in this case will be unable to recover any damages and the Settlement will therefore not be fair, adequate and reasonable under Rule 23. Consequently, Plaintiffs claim the Court cannot approve the Settlement unless and until it certifies the Question and the Maryland Court of Appeals returns a favorable opinion. Thus, by extension and despite their earlier representations, Plaintiffs essentially posit that the Settlement, as preliminarily approved, does not currently pass muster under Rule 23.

In contrast, Defendants advance three primary arguments. First, Defendants claim the Settlement does not contemplate certification and the Court should require Plaintiffs to adhere to their agreement. Second, Defendants construe certification as an attempt by Plaintiffs to adjudicate the Insurers' coverage dispute and argue neither this Court nor the Maryland Court of

9

Appeals can do so without first deciding the Defendants' underlying tort liability.[6] Last, Defendants claim this Court cannot certify the Question because the Question is not determinative of an issue in this litigation.

As a predicate matter, this motion is not a Rule 23 motion for final approval of the Settlement. Nonetheless, because Plaintiffs argue the Question is determinative of the Court's final approval analysis, a brief discussion of the approval standard is appropriate. Rule 23(e) permits courts to grant final approval to a class action settlement only after the court determines the settlement is "fair, adequate and reasonable" to the plaintiff class members. Fed. R. Civ. P. 23(e)(1)(B) & (C); In re Jiffy Lube Securities Litigation, 927 F.2d 155 (4th Cir. 1991). To do so, the court must examine whether the interests of the class are better served by the settlement than by further litigation. In re Minolta Camera Products Antitrust Litig., 668 F. Supp. 456, 459 (D. Md. 1987). Nonetheless, the court should not change a Rule 23 fairness hearing into a trial. Id. Instead, the court must test whether class counsel exercised

---

[6] Plaintiffs' proposed Question deals squarely with the viability of the Miller-Shugart protocol in Maryland and is consequently distinct from any issue bearing on whether the Insurers are required to provide coverage for Defendants under the relevant insurance policies. As such, this argument is inapposite and need not be addressed further.

10

sufficient "business judgment" on behalf of the plaintiff class. Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1974).

While Rule 23(e) provides the legal standard for final approval, courts typically follow a two-step procedure to analyze and finalize a class action settlement. See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994). First, upon motion by the parties, the court preliminarily approves a proposed settlement if the proposal is "within the range of possible approval," after which the parties notify the proposed class members of the settlement. Id. Later, the court conducts a final approval "fairness hearing" to establish whether the proposed settlement is "fair, adequate and reasonable" within the meaning of Rule 23. Id. The fairness hearing also affords interested parties an opportunity to object to the proposed settlement. Id.

In this case, the parties and the Court have proceeded consistent with this protocol. For the reasons stated above, the Court preliminarily approved the Settlement with a high degree of confidence that the Settlement would ultimately be approved under Rule 23 once the parties provided adequate class notice and assuming few if any stakeholders raised objections at the fairness hearing. Despite its non-traditional nature, the Settlement appeared eminently reasonable upon preliminary

11

approval, and the Court fails to comprehend how Plaintiffs' new-found knowledge of one non-binding case, which was published several months before Plaintiffs signed the Settlement, has changed the Settlement from reasonable to unreasonable.

More significantly, however, certification of the Question is not determinative of the Court's Rule 23 final approval analysis. There are several factors which, upon final review, would likely enable the Court to approve the Settlement without certification. For example, given Defendants' lack of financial resources, it is difficult to imagine how further litigation in this case would serve the plaintiff class members better than the Settlement, even while recognizing that the settlement fund established by the Settlement may never be funded. But for the insurance policies, it appears Defendants have no significant assets that Plaintiffs may seek to recover if litigation were to continue. Moreover, leveraging the Miller-Shugart framework to enable the possibility of recovery where none otherwise existed is an elegant solution to Defendants' dearth of financial assets, and the mere fact that the parties devised the Settlement is a testament to their collective competence and creativity. And while this Court cannot divine the outcome of Plaintiffs' future litigation against the Insurers, the clear and substantial weight of authority leans heavily toward

Maryland's approval of the Miller-Shugart protocol.  In any event, the mere and distant hypothetical that Maryland may not approve of the protocol is insufficient to remove the Settlement from the realm of the fair, the reasonable, and the adequate.

Outside the context of the impending Rule 23 analysis, Defendants submit that certifying the Question would be tantamount to unilaterally changing the terms of the Settlement because the Settlement neither requires nor explicitly contemplates certification.  Plaintiffs rightly counter that the requirements of Rule 23 cannot be circumvented via contract or settlement agreement, but as final approval under Rule 23 is not contingent upon certification, the Court is sympathetic to Defendants' position.  Despite Plaintiffs' protestations to the contrary, the terms of the Settlement, along with Plaintiffs' motion for preliminary approval, persuasively indicate the parties did not intend to seek certification of the Question prior to the final settlement hearing.  For example, Plaintiffs initially scheduled the final settlement hearing less than four months from the date on which the Court preliminarily approved the Settlement.[7]  Yet, the process of certifying a question to the Maryland Court of Appeals, briefing that question, and then

---

[7] Plaintiff's motion for preliminary approval was filed on November 22, 2010, and contemplated a final approval hearing on March 3, 2011.  See ECF No. 143.

awaiting the high court's answer would undoubtedly take very much longer than four months. If the parties at all contemplated certification prior to final approval, there is simply no chance Plaintiffs' four-month schedule would be tenable. Assuming Plaintiffs did not propose a disingenuously ambitious timeline for final settlement approval, they could not have contemplated pre-final approval certification.

Finally, if the Court were to grant Plaintiffs' motion, the resulting proceedings in the Maryland Court of Appeals may require the Insurers, who would have a significant interest in the Court of Appeals' decision, to defend their position. Plaintiffs suggest this Court may join the Insurers in this action under either Federal Rule of Civil Procedure 19 or 24, or, alternatively, they point to Maryland Rule 8-511, which may allow the Insurers to participate as amici curiae before the Maryland Court of Appeals. In either case, the procedural complexities are substantial. At the same time, at least one Insurer, Legal Mutual, is already engaged in litigation with some Defendants in Maryland state court, and the other Insurer, Illinois Union, has indicated it will commence similar proceedings shortly. Such litigation provides a far more simple and efficient mechanism for adjudicating the Miller-Shugart question because the Insurers will be able to engage in

14

discovery regarding the Settlement and its use of the Miller-Shugart protocol, zealously defend their interests from the outset of the dispute, and develop a more complete record for ultimate consideration by the Maryland Court of Appeals, provided of course the high court grants the eventual appellant's petition for certiorari.[8]  Thus, given the merits of state court litigation and the difficulties inherent in certification, the interests of justice are best served by allowing all stakeholders to defend their positions before the Circuit Court of Baltimore County.

One final administrative note: the Court is aware of the impending deadlines for class notice and the delay caused by the resolution of this motion.  To the extent necessary and upon motion by the parties, the Court will readily grant an extension of those deadlines, provided the requested extension is reasonable.  As the final approval hearing in this case is currently scheduled for June 2, 2011, the parties should have ample time to complete their respective duties.

---

[8] Plaintiffs argue the current state court lawsuit filed by Legal Mutual is a declaratory judgment action in which Legal Mutual is disputing its coverage, and it therefore has nothing to do with the viability of Miller-Shugart in Maryland.  Regardless of whether the parties may litigate the Miller-Shugart question in that particular action, state court proceedings to which the Insurers are parties present a superior venue in which to adjudicate Plaintiffs' Question.

III. CONCLUSION

Because certification is not required by the standards of Rule 23, because the parties did not contemplate certification prior to the Settlement's final approval, and because the interests of justice are better served by litigating the viability of Miller-Shugart in an action initiated in the state court, the Court will deny Plaintiffs' motion and will issue a separate Order to that end.

/s/<br>
William M. Nickerson<br>
Senior United States District Judge

March 16, 2011